JAMES E. GALLAGHER, RESPONDENT, v. S. DUNCAN KARNS AND OTHERS, APPELLANTS.

*Liens — for work rendered in "torpedoing" an oil well — 1880, chap. 440 — the proceeding prescribed by said statute, is an action — the court may appoint a receiver.*

In constructing and operating oil wells it is customary to explode torpedoes therein, for the purpose of increasing the flow of oil. The process does not produce oil, but only serves to increase and quicken the flow thereof.

*Held,* that one rendering services and peforming labor in "torpedoing" a completed oil well was entitled to a lien for the value thereof, under chapter 440 of 1880.

The proceeding prescribed by that act for the enforcement and collection of the liens therein provided for, is an action, and the court has power, in a proper case, to appoint a receiver of the property during the pendency thereof.

APPEAL from the order of the Cattaraugus Special Term appointing a receiver " of the oil wells and property mentioned in the notice and bill of particulars herein" *pendente lite.*

One of the affidavits used upon the motion stated the "torpedoing" process as follows, viz.: "That torpedoing is a process for increasing the flow of oil in an oil well; that it does not produce oil, and is of no value unless there is oil in a sand rock when it is exploded; that it is a process resorted to at different times during the life of the well, but never until after the well is completed; that its object is to shatter up or make cracks in the oil-bearing rocks in order to

increase the flow of oil; that it does not bring to the well oil that would not otherwise come, but it gets it there sooner than it would come if not resorted to."

Karns' answer states that "the labor performed and materials furnished in torpedoing oil wells numbers one, two, three and four, as mentioned and set forth in the notice and bill of particulars herein, consisted in each case of the use of a torpedo constructed of a shell containing a powerful explosive substance, suspended in such oil well at or near the oil-bearing rock, for the purpose of increasing the productiveness of the well, with a superincumbent column of fluid to tamp the blast, and was exploded by means of a tap several hundred feet under such fluid tamping."

*Johnson & Markham*, for the appellants.

*Phelps & Eaton*, for the respondent.

HARDIN, J. :

Chapter 440 of the Laws of 1880 (3 R. S. [7th ed.], 2440) provides, viz. : "Any person who shall hereafter perform any labor in or about the sinking, drilling or completing of any oil well, *or any* well sunk or drilled for oil or gas or other volatile or mineral substances within the State of New York, * * * shall on filing with the county clerk of the county in which the property is situated *the notice* prescribed by the next section of this act *have a lien for the* value of such labor and materials upon such tank or other receptacle as aforesaid, and upon such well as aforesaid and appurtenances, and upon the lot, premises, parcel or farm of land upon which the same shall be situated to the extent of the right, title and interest of the owner of the property." * * *

Section 2 provides for the filing of a notice in the county clerk's office of the county where the property is situated. Section 4 provides for serving notice of the claim upon the owner. Section 5 of the act provides for bringing "*an action* in the Supreme Court in the county in which the property is situated * * * to enforce such lien. *Which action* shall be commenced and the proceedings therein conducted and judgment entered in the same manner and to the same effect as in actions brought in said courts to enforce liens

provided by chapter 402 of the Laws of 1854, and the several acts amending the same; *and* the said *courts shall have* full power to *adjust* and enforce all the rights and equities between any or all of the parties to such actions, and *enforce* or protect the same by any of the remedies usual in said courts." (1.) Torpedoing comes within the provisions of the act. (2.) Proofs made at the Special Term showed a compliance with the provisions of the act to the extent of creating a lien in favor of the plaintiff. (3.) Under the last part of section 5 the court may "enforce" the "equities" of the plaintiff by any of the remedies usual in the court. Liens and equities arising thereout are enforced in this court by the remedy reached through the instrumentality of a receiver, wherever and whenever such liens and equities are in danger and liable to fail without such instrumentality. (Code of Civil Pro., 713.)

Under section 5 of the act from which we have quoted, it must be assumed that the remedy to enforce the lien given by the act, is "an action." The section differs from the statutes under which the court held that the remedy to enforce a mechanic's lien, in *Halla-han* v. *Herbert* (57 N. Y., 409), was a special proceeding. In the case in hand the court had power to appoint a receiver *pendente lite.* (Sec. 5, *supra; Webb* v. *Van Zandt* (16 Abb. Pr., 314, in note); *Poerschke* v. *Kedenburg* (6 Abb. [N. S.], 177); *Gauhn* v. *Mills* (2 Abb. N. C., 114.)

Facts were shown to the Special Term which called for its exercise of discretion as to the appointment of a receiver, and we are satisfied with the direction which the discretion took, and we therefore should affirm the order.

SMITH, P. J., concurred; HAIGHT, J., not sitting.

Order affirmed, with ten dollars costs and disbursments.